FILED
2024 May-30  PM 12:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 25

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KATHRYN HENDRIX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No 2:21-cv-00300-MHH |
| | ) | |
| CRC INSURANCE SERVICES, INC., | ) | |
| TRUIST FINANCIAL CORP/. and | ) | |
| TRUIST BANK, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANTS' FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Plaintiff, Kathyrn Hendrix, submits the following supplemental responses to Defendant's First Interrogatories and Requests for Production pursuant to Rules 26 and 33 of Federal Rules of Civil Procedure.

### GENERAL RESPONSES

1.    The word usage and sentence structure of the Responses is that of the attorney for Plaintiff who assisted in the preparation of preparation of the Responses and is not that of the person executing the response.

2.    The Responses are based on information now available to Plaintiff.

3.    Plaintiff has not completed her discovery in this lawsuit, nor has she completed her investigation into the claims which are the subject of this action and other matters relevant to this litigation

4.    In providing these Responses, Plaintiff does not waive or intend to waive, but rather preserve and intend to preserve:

     a.     All objections as to competency, relevancy, materiality, and admissibility:

     b.     The right to object on any ground to the use or admissibility of any of the answers herein or documents produced by Plaintiff in connection with the Answers in any subsequent proceedings, including the trial of this or any other action;

     c.     All objections as to vagueness and ambiguity; and

     d.     The right to object on any ground to any further Discovery Requests involving or related to any of the Individual Discovery Requests.

5.     Plaintiff reserves the right to supplement any responses.

## INTERROGATORIES

1.     State your full name, date of birth, home address, each and every other name by which you have been known in your lifetime, and all addresses where you resided during the past five (5) years.

     **RESPONSE: Kathryn Robison Hendrix; ▮1981; ▮Devon Drive, Birmingham, AL 35209**

2.     For the five (5) years prior to the start of your employment with Defendants, identify your employers, including:

     (a)     The name and address;

     (b)     The dates you were employed by each employer;

     (c)     Each position held with each employer;

     (d)     The dates you held each position with each employer;

     (e)     Your rate of pay or salary for each position held;

     (f)     Every reason for your separation from the employer.

**RESPONSE: Plaintiff objects to this request as overly broad and unduly burdensome as it is not reasonably limited in time proportional to the needs of the case. Plaintiff was employed with Defendant CRC for more than 13 years comprising nearly all of her entire adult career. Subject to and without waiving this objection, Plaintiff states she was employed with Dixon Hughes currently located at 800 Shades Creek Pkwy, # 500, Birmingham, Alabama 35209 from January 2004 to October 2006. From January 2004 to April 2004 she was an intern and was hired full time as a Staff Accountant in August 2004. She earned a salary of $50,000 per year. She left Dixon Hughes to join CRC because of her personal relationship with CRC and the potential growth opportunities. Plaintiff began working with CRC in October of 2006 and remained employed at CRC until her constructive discharge in November of 2019.**

3.      State each and every legal proceeding in which you have been a party, including, but not limited to, actions in federal court, actions in state court, claims for Social Security disability or retirement benefits, claims for workers' compensation benefits, petitions for bankruptcy, arbitrations, or claims before an administrative body including but not limited to the NLRB, OCR, or Department of Labor. In your response, please indicate the date each legal proceeding began, its disposition date, the court or agency where it was filed (court or agency number if available), and its result.

**RESPONSE: Plaintiff objects to this request as overly broad and unduly burdensome as it is not limited in time and scope to provide information proportional to the needs of the case. Subject to and without waiving this objection, Plaintiff states she has not been party to any legal action outside of this lawsuit.**

4.     If you have ever filed a Charge of Discrimination with any local, state, or federal agency, including but not limited to the Equal Employment Opportunity Commission ("EEOC") in which you have alleged any form of discrimination, please state:

(a)     The date you filed the Charge;

(b)     The name and address of the employer(s) against whom you filed the Charge;

(c)     The alleged form of discrimination; and

(d)     The outcome of the Charge.

**RESPONSE: Plaintiff objects to this request as overly broad and unduly burdensome as it is not limited in time and scope to provide information proportional to the needs of the case. Subject to and without waiving this objection, Plaintiff states she has not filed any charge of discrimination aside from the one made basis for this suit.**

5.     State whether you were ever arrested, charged or convicted of any crime.  If so, please state the date, the location and jurisdiction, and crime.

**RESPONSE: Plaintiff objects to this request as overly broad and unduly burdensome as it is not limited in time and scope to provide information proportional to the needs of the case. Subject to and without waiving this objection, Plaintiff states she has not been arrested, charged, or convicted of any crime.**

6.     If you ever made any complaint of discrimination (whether written or verbal) at any place of employment, state:

(a)     The date you made the complaint;

(b)    The name and address of the employer(s) and co-worker(s) against whom you made the complaint;

(c)    The nature of the complaint; and

(d)    The outcome of any investigation into the complaint.

**RESPONSE: Plaintiff objects to this request as overly broad and unduly burdensome as it is not limited in time and scope to provide information proportional to the needs of the case. Plaintiff also objects to the ambiguous meaning of "complaint of discrimination." Subject to and without waiving this objection, Plaintiff states she has not made any complaint of discrimination aside from the complaints made basis for this suit. Regarding the complaints made the basis for this suit, Plaintiff states she that she began making informal complaints in 2016 to Corey Daugherty concerning how Clay Segrest continually treated her as a secretary / administrative assistant. These complaints were sporadic and exact dates are not know. The addresses of these individuals are maintained by Defendants and Plaintiff is not aware of the outcome of any investigation except that these continued complaints are what Plaintiff believes lead to her new title as inside broker. Throughout 2017 Plaintiff continued to provide Corey Daugherty information related to her workload, revenue breakouts, and similar, to illustrate the differential treatment between males and females within the department. Plaintiff noted during a lunch with Corey Daugherty and Clay Segrest on August 8, 2017 that CRC had not hired a female broker in Birmingham for over 12 years and pointed out that was a "problem" which led to Corey to starting the paperwork for Plaintiff's title change to inside broker. Sometime in 2017 (possibly late 2017) Plaintiff was staying late and having a beer with Rusty Hughes in his office. Rusty brought up that another employee, Sarah Dunston, had shared with him that she was concerned women were**

being overlooked in the department. Plaintiff confirmed to Rusty she had the same concerns and she was glad they were aware of the problem. Near the broker retreat of 2018 Plaintiff complained to Clay Segrest that she was being excluded from the Broker retreat while a male first year broker was included. In August of 2018 Plaintiff again shared with Mr. Daugherty that she had too many account executive responsibilities to effectively pursue the broker role, shared with him an agency breakout she had crated showing low revenue agencies that were taking up significant time to see if they could be sent to the new small business broker in the department freeing up time to take on marketing new business. Plaintiff also illistruated to Mr. Daugherty the team workflow showing the exorbitant amount of administrative work she was responsible for. In 2018 (believed to be fall) Plaintiff discovered she was excluded from an underwriter broker retreat (MedPro) while male brokers were included. When another broker (Lee McClure) requested his account executive (Lauren Lindberg) be allowed to attend Lindberg shared the invitation with Plaintiff leading Plaintiff to believe she was invited. Plaintiff discovered her room/lodging was not at the same location as the male brokers, was not paid for by the underwriters, and she had been excluded. She left the office crying prompting Rusty Hughes to tell Corey Daugherty to call her. When he called she said she was mortified and did not want to go where she was not invited. Corey told her she was to attend any broker event but did not take steps to correct her exclusion. All attendees other than Plaintiff received a CRC jacket for attending. Before the event, Rusty Hughes e-mailed Plaintiff asking she "bring the beer." Plaintiff spoke with Ron Helveston on June 27, 2019 and shared her complaints of sex discrimination and that she had specifically been blocked from broker roles. Mr. Helveston was pleased to hear Plaintiff was not complaining about sexual touching as one of the "#metoo" people and told Plaintiff at

that time that if he shared her complaint she could not return to the department and asked if she would be willing to change departments, she said yes.

7.      Identify each person who provided you with information or documents from which any information was derived in response to Defendants' First Set of Interrogatories or Requests for Production of Documents.

**RESPONSE: Plaintiff objects to this request to the extent it seeks information subject to the attorney work product. Subject to and without waiving this objection Plaintiff states she responded to these requests on personal knowledge without assistance from another individual.**

8.      Identify each person, who has or had possession of any documents responsive to Defendants' First Set of Requests for Production of Documents.

**RESPONSE: Plaintiff objects to this request to the extent it seeks information subject to the attorney work product. Subject to and without waiving this objection Plaintiff states she is not aware of any documents from any third party responsive to the Requests for Production of Documents.**

9.      If you contend you are entitled to withhold from production any document or thing responsive to these requests on the basis of any privilege or other ground, provide a "privilege log" that (a) describes the nature of the document (e.g., letter or memorandum), (b) states the date of the document, (c) identifies the persons who sent or authored the document and all recipients, (d) describes the subject matter of the document, and (e) state the basis upon which the you contend you are entitled to withhold the document or thing from production.  You are instructed to produce

any and all non-privileged or non-exempt portions of any document you contend are otherwise privileged or exempt from production.

**RESPONSE: Plantiff has not withheld any documents on the basis of privilege but will produce a proper privilege log if necessary.**

10.    Identify each person who you believe has knowledge of the facts alleged in your Complaint. Please note this request is broader than Rule 26 and seeks identification of all persons who may have information about this matter rather than being limited to those persons whose testimony Plaintiff may rely upon.

**RESPONSE: Plaintiff objects to this request to the extent in seeks information protected by the attorney work product. Discovery is still ongoing and not all witnesses have been identified. Plaintiff will follow all orders of the court and the Federal Rules of Civil procedure related to disclosures of witnesses and exhibits.**

11.    Identify each person who you know or believe has issued a statement related to the subject matter of this case or has given a statement to you, your attorneys, or anyone acting on your behalf regarding the facts and circumstances underlying this case.

**RESPONSE: Plaintiff objects to this request to the extent in seeks information protected by the attorney work product. Discovery is still ongoing and not all witnesses have been identified. Plaintiff will follow all orders of the court and the Federal Rules of Civil procedure related to disclosures of witnesses and exhibits.**

12.    Identify each and every entity or person from whom you have sought employment since the beginning of your employment with Defendant through present and for each entity or person you identify, state the following:

(a)     The name of the person or entity;

(b)     The date you sought employment with the person or entity; and

(c)     Whether the person or entity offered you a position or job.

(d)     If you accepted the job, how much compensation you earned while employed there.

**RESPONSE: Plaintiff objects to this reqeust as overly broad, unduly burdensom, and not limited in time and scope to discover information proportional to the needs of the case. Subject to and without waiving this objection, Plaintiff states after the discriminatory treatment she suffered at CRC she needed treatment for anxiety and depression and career counseling because she was subject to a non-compete in the only industry she had ever worked in. Plaintiff sought and obtained employment doing bookkeeping work for Hendrix Properties and 1st Commercial Realty in March of 2020 and has earned approximately $3,625 to date. Plaintiff sought and obtained employment as a home childcare provider/learning coach working with the children of Laura Ezell, PhD and Jon Ezell, PhD in September of 2020 and has earned approximately $8,000 to date. Plaintiff also obtained employment with Laura Hendrix toward packing and distributing LaLa's Fine Foods and has earned a few hundred dollars to date. Plaintiff has not sought employment with any other entity or person.**

13.     Since your last day of regular, full-time work with Defendants, state the dates of each and every period in which you were self-employed and describe the nature of any and all self-employment you held, including the dates and total compensation earned.

**RESPONSE: Plaintiff participated in career coaching after her constructive discharge because she was subject to a non-compete and could not return to the wholesale insurance industry. Plaintiff begain doing private QUICKBOOKS work in March of 2020 for Hendrix Properties and 1st Commercial Realty and is still working in that role. To date she has earned $3,425 (including the cost of training). Plaintiff also acted as a Kindergarten learning coach and child care provider for the Ezell family from September 2020 to January 2021, and an in-home, private, child care provider for the same from February 2021 to current. In that role, Plaintiff has earned $7,575 to date. Plaintiff is actively working with Laura Hendrix toward the bottling and distribution of LaLa's Fine Foods salad dressing but has not earned any income related to the same. Plaintiff spent time volunteering as a handwriting coach from September 2019 to March 2020 but did not receive any income.**

14.    If at any time after your last day of regular, full-time work with Defendants you stopped actively seeking employment, state in detail every reason you ceased actively seeking employment and the dates she ceased actively seeking employment.

**RESPONSE: Plaintiff was subject to a non-compete and required career coaching because, because the niche industry related to wholesale brokerage of professional liability insurance at CRC was her only true "adult employment experience." She suffered from increased anxiety related to listing CRC as a reference/prior employer on any job application. Because of the anxiety related to seeking jobs with unknown third parties, Plaintiff began exploring opportunities of self-employment. Plaintiff began training with a QUICKBOOKS ProAdvisor in March of 2020 to take over the role of bookkeeper for Hendrix Properties and 1st Commercial Realty. Because of the COVID-19 pandemic Plaintiff had opportunity to work as a kindergarten learning coach and childcare provider**

for the Ezell Family. **Plaintiff is actively working with LaLa's Fine Foods toward the bottling and distribution of salad dressing and is still working toward QUICKBOOKS certification. Plaintiff has not submitted any third party employment applications.**

15. Itemize all damages you claim you suffered as a result of the alleged conduct of Defendants by specifying the nature of the alleged damages, the amount of the alleged damages, and how you calculated the amount of the alleged damages, and identify all documents that relate to, describe, or refer to the alleged damages. Please note this request should include any number or range that Plaintiff or her attorneys intend to suggest to a jury during trial.

**RESPONSE: Plaintiff objects to this request to the extent it seeks information subject to the attorney work product. Subject to and without waiving this objection Plaintiff suffered lost wages related to failure to promote/pay discrimination to be determined through discovery and lost wages through the date of trial. Plaintiff suffered mental anguish damages to be determined by a jury. Plaintiff's approximate amount of damages includes back pay in the amount of bonuses as estimated based on Clay Segrest's bonuses for 2 years preceding the filing of this suit in the amount of $216,250. Back wages (including average bonus amounts given to Clay Segrest) from the date of constructive discharge totaling $433,625. Out of pocket expenses including insurance, therapy expenses, and job search efforts currently estimated at $10,375 and increasing. And mental anguish/punitive damages representative of the $300,000 cap. Plus attorney's fees and costs to be determined.**

16. Identify by name and address each and every doctor, therapist, counselor, or other professional that you saw or consulted for the last five (5) years.

**RESPONSE: Gonzalo Gurmendi, M.D. – Psychiatry Associates P.C.; 1736 Oxmoor Rd, Birmingham AL 35209 Katie Reed, LPC – Present Wellness Counseling, 2 Riverchase**

Office Plaza, Hoover, AL 35244; Michelle Turbor, MA, LPC, NCC – Cardinal Wellness, 3055 Lorna Road, Ste. 200, Hoover, AL 35216; Emily Trentacoste, Grayson & Associates, 2204 Lakeshore Drive, Suite 440, Homewood AL 35209.

17    Identify the user name and email address for any social media account maintained by you within the last five (5) years, including, but not limited to, Facebook, Twitter, Instagram, TikTok, SnapChat, LinkedIn, internet blogs or MySpace.

**RESPONSE: Facebook –** ████████████████**@GMAIL.COM (inactive January 2018); Instagram –** ████████████████**@GMAIL.COM (inactive September 2019; Linkedin – KHENDRIX@CRCINS.COM (inactive summer 2019); Snapchat - yokatyo**

18.    Identify the user name, registration information, account detail, login information, or any other identifying information for any job board or job search websites for which you were registered or of which you were a member, including but not limited to: Hot Jobs, Career Builder, Monster, job.com, indeed.com and salesjobhunter.com within the last five (5) years.

**RESPONSE: Plaintiff objects to this request as overly broad and unduly burdensom in that it seeks information (logins) that are not proportional to the needs of the case. Subject to and without waiving this objection plaintiff states NONE.**

19.    If any requested document or thing that was in your possession or under your control has been lost, destroyed or cannot be found, identify each such document or thing and describe what happened to it.

**RESPONSE: None.**

20.     State whether or not you possessed a cellular phone during your employment with Defendants.  If your response is in the affirmative, provide your cellular number(s) and name of your service provider(s).

**RESPONSE: During her employment, plaintiff had her personal phone number acquired by the company and her company phone was her primary/only phone. After her constructive discharge, the company released the number to her for personal use. (205) 542-▮▮▮▮ AT&T.**

21.     If you believe or contend that Defendants treated other employees more favorably than it treated you, identify all employees who you believe were treated more favorably, why you believe they were treated more favorably, and the names of Defendants' agents or employees who you contend were responsible for the differing treatment.

**RESPONSE: All individual who identify as male in the professional liability department were treated more favorable by being given higher pay, more opportunities, and handing down administrative work to me and other females. Andrea Sutton and Yvette Talsma were paid more because they did not complain about discrimination or try to enhance their job positions. I believe the broker pay structure was completely subjective and not guided by any corporate structure, benchmarks or guideposts leaving room for implicate and intentional bias, retaliation, and pay discrepancies. I believe I should have been promoted to associate broker in 2017 to a position later taken by Brandon Hayes and would have then been comparable to all associate brokers in the CRC Professional Liability department. Lauren Lindberg was not required to sign a restrictive non-compete agreement at the time of her promotion.**

22.     Identify every person (excluding your attorneys) with whom you have communicated regarding the allegations of this case, including the following:

(a)     the name of the individual;

(b)     dates of communications;

(c)     the form of the communications (e.g., in person, email, text message, etc.); and;

(d)     the substance of the communications.

**RESPONSE: Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff cannot recall each and every conversation she had through her employment and after her constructive discharge related to her allegations of discrimination. Subject to and without waiving this objection, Plaintiff states she had multiple conversations with co-workers including Tyler O'Conner, making verbal complaints to Corey Daugherty, Clay Segrest, and Rusty Hughes on multiple occasions including providing information related to the number of women brokers hired and the amount of administrative work assigned to her. These conversations are detailed in response to Interrogatory 6. It was not unusual for Plaintiff to discuss the differential treatment with co-workers Lauren Lindberg, Kathy Reeves, Sara Brown, Christy Smith, Andrea Sutton, Yvette Talsma, Amber Varner, Kathy Roussell, Danielle Levingston, Amanda Pender, Corey Woodward, and Brandon Hayes. In summer 2016 Susan Phillips told Plaintiff she had requested her as an inside Broker but Rusty and Corey told her there were "other plans" for Plaintiff. Again, in July of 2018 Plaintiff had a discussion with Susan Phillips where she learned that Dave Sloneker had also asked for her and was denied by Rusty, Corey, and John Cadden.  During this**

discussion, Plaintiff told Susan she had an attorney to review her non-compete after Corey, Rusty, and Clay asked her on 3 different occasions if she was having her non-compete reviewed. Plaintiff told Susan her reviewing attorney had taken several hours to review the agreement and wanted to sit down with her because it was the "most restrictive" agreement he had seen. She told Susan she was never invoiced for the meeting and Susan laughed saying "because he knows he'll be hearing from you again." Susan said later something along the lines of "maybe we all should call him" and discussed that they don't hire women at CRC. Plaintiff specifically asked Mr. Segrest around the 2018 broker retreat for advice on what to do going forward. Plaintiff also spoke directly with Ron Helveston in June of 2019 where he informed her that if he shared her complaints she would not be able to return to the department but he could transfer her because he had done so with another employee. She asked that he share the complaints and said she was willing to transfer. When Mr. Helveston did not transfer her, Plaintiff took medical leave and resigned understanding that she had no choice because of her complaints – as Mr. Helveston had already told her she would not be able to return to her team. Throught 2017, 2018, and 2019, Plaintiff also spoke with Laura Hendrix (Mother), Jack Hendrix (Father), Laura Ezell (sister), Jon Ezell (brother in-law) and Elizabeth Burwell (sister) about her experiences. While difficult to remember all familial communications, most if not all discussion related to CRC and Truist would have been verbal. Plaintiff has also spoken at length with her mental health providers otherwise identified herein.

23.     Have you ever posted anything on social media or on the internet relating to your employment with Defendants, your departure from Defendants and/or the claims in your lawsuit against Defendants? If your answer is yes, please list the approximate date of the post, the name

of the platform where you posted (i.e., Facebook, Twitter, LinkedIn, etc.), and the URL for your profile on that platform.

**RESPONSE: No.**

24.     Have you ever communicated with any employee of Defendants on your cell phone and/or via text message, either during your employment or after your employment with Defendants? If your answer is yes, please list the name of the employee with whom you communicated, the subject matter of the conversation and/or text messages, and the dates of the communications.

**RESPONSE: Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff was employed with Defendant CRC for more than 13 years and her cellular phone was her only phone. During the years she communicated with multiple employees. Subject to and without waving this objection, since her constructive discharge and return of CRC property (including a cellular phone) Plaintiff communicated with Lauren Lindberg around February, March and April of 2020 on her personal device (that she did not own during her employment) but has not contacted or been contacted by Ms. Lindberg since the filing of this suit.**

25.     Have you ever discussed the claims in your lawsuit and/or the facts and circumstances surrounding your allegations in this lawsuit with any employee, former or current, of Defendants? If your answer is yes, please state the name of the employee, the date of the communication, and how you communicated with the employee (i.e., by text message, by phone, by email, in person, etc.

**RESPONSE: Plaintiff objects to this request as overly broad and unduly burdensome.** Plaintiff cannot recall each and every conversation she had through her employment and after her constructive discharge related to her allegations of discrimination. Subject to and without waiving this objection, Plaintiff states she had a discussion with Corey Daugherty and Clay Segrest on August 8, 2017 regarding discrimination in the department. Before she was promoted but after the August 8, 2017 conversation Plaintiff was staying late and having a beer with Rusty in his office. Rusty brought up that another employee, Sarah Dunston, had shared with him that she was concerned women were being overlooked in the department. Plaintiff confirmed she had the same concerns and she was glad they were aware of the problem. August 8, 2018 Plaintiff again shared with Mr. Daugherty that she had too many account executive responsibilities to effectively pursue the broker role. Plaintiff shared with him an agency breakout she had crated showing low revenue agencies that were taking up significant time to see if they could be sent to the new small business broker in the department freeing up time to take on marketing new business. Plaintiff also illistruated to Mr. Daugherty the team workflow showing the exorbitant amount of administrative work she was responsible for. Plaintiff spoke with Ron Helveston on June 27, 2019 and shared her complaints of sex discrimination and that she had specifically been blocked from broker roles. Mr. Helveston was pleased to hear Plaintiff was not complaining about sexual touching as one of the "#metoo" people and told Plaintiff at that time that if he shared her complaint she could not return to the department and asked if she would be willing to change departments, she said yes.

26.    Identify each and every male co-worker(s) who you claim was paid at a higher rate of pay and employed in a substantially similar position to the position you held.

**RESPONSE:  Clay Segrest. Other males may have been hired in as broker in positions that Plaintiff was passed over for. More may be identified through discovery.**

## REQUESTS FOR PRODUCTION

1.      Any and all documents used or relied upon by you in answering Defendants' first set of interrogatories.

**RESPONSE: Plaintiff objects to this request to the extent it seeks information protected by attorney work product. Discovery is still ongoing and Plaintiff will follow all orders of the Court and the Federal Rules of Civil Procedure related to disclosure of documents. Subject to and without waiving this objection, Plaintiff will produce journal notes, pay information, and other responsive documents identified.**

2.      Any and all documents relating to or referring to any lawsuit in which you were a party or witness, including but not limited to, any action in which you testified by deposition or any action in which you testified as a witness at trial.

**RESPONSE:  None.**

3.      Any and all documents relating to or referring to any bankruptcy petition you filed or bankruptcy proceedings in which you were a party.

**RESPONSE: None.**

4.      Any and all documents relating to or referring to any claim or application for unemployment benefits submitted on your behalf to the Alabama Department of Labor.

**RESPONSE: None.**

5.      Any and all state and federal tax returns filed by you for the years 2018 through the present.

**RESPONSE: Plaintiff will provide appropriately redacted tax filings for 2018 to current for the purpose of identifying income.**

6.      Any and all documents relating to charges you filed with the Equal Employment Opportunity Commission ("EEOC").

**RESPONSE: Plaintiff has only filed the charge affiliated with this action and produced the EEOC FOIA file for that charge.**

7.      Any and all documents you received from the EEOC or that are in your possession or control relating to or referring to the EEOC charge(s) you filed against Defendants, including, but not limited to, those records which you did not submit but which were relied upon to establish your statements to the EEOC in your charge(s) or of which you submitted summaries or compilations to the EEOC rather than the actual documents.

**RESPONSE: Plaintiff has produced the EEOC FOIA file for this charge.**

8.      Any and all documents relating to or referring to any of the factual allegations in your Complaint.

**RESPONSE: Plaintiff objects to this request to the extent it seeks information protected by attorney work product. Plaintiff will produce responsive non-privileged information.**

9.      Any statements or affidavits, signed or unsigned, provided by you or obtained by you from any witness or potential witness relating to or referring to the factual allegations in your Complaint or any alleged act of discrimination by Defendants, including all drafts of such statements or affidavits.

**RESPONSE: Plaintiff objects to this request to the extent it seeks information protected by attorney work product. Discovery is still ongoing, and Plaintiff will follow all**

**orders of the Court and the Federal Rules of Civil Procedure related to disclosure of documents. Subject to and without waiving this objection, Plaintiff has not obtained any statements.**

10.     Any and all documents exchanged between you and Defendants relating to or referring to your employment with Defendants, including your separation from employment.

**RESPONSE: Plaintiff objects to this request as overly broad and unduly burdensome as not limited in time and scope. Plaintiff was employed with Defendants for more than 13 years and exchanged countless documents. Plaintiff objects to this request in that it seeks information more readily available from Defendants records, e-mail servers, etc. Subject to and without waiving this objection, Plaintiff has provided certain employment documents including an employment agreement, her e-mails communicating her constructive discharge with HR and other documents she has available.**

11.     Any and all documents exchanged between you and any third party (other than your attorney), including but not limited to all emails, text messages, or messages and posts exchanged over social media, relating to or referring to the allegations in your Complaint.

**RESPONSE: Plaintiff will produce responsive documents in her possession.**

12.     Any and all documents that were prepared by you or at your direction relating to or referring to your claim that Defendants discriminated against you.

**RESPONSE: Plaintiff will produce responsive documents in her possession.**

13.     Any and all documents relating to or referring to any discriminatory act, conduct, statement or other action by Defendants or any of Defendants' former or present employees on which you base your claim.

**RESPONSE: Plaintiff objects to this request as overly broad and unduly burdensome as not limited in time and scope. Plaintiff was employed with Defendants for more than 13 years and cannot recall each discrete act of discriminatory conduct. Subject to and without waiving this objection, Plaintiff refers to her EEOC charge, the Complaint in this action, the e-mails sent to HR and her journal notes she will produce.**

14.    Any and all documents relating to or referring to any money or income you earned from any employer or other source for any period of separation from employment with Defendants.

**RESPONSE: Plaintiff will produce documents in her possession responsive to this request.**

15.    Any and all documents relating to or referring to every effort you made to secure employment during any period of separation from employment with Defendants, including but not limited to any and all applications for employment, resumes, written offers of employment, letters denying employment, diaries, desk pads, appointment books and any other document related to your attempts to obtain employment.

**RESPONSE: Plaintiff will produce invoices from a life coach she worked with related to her need/requirement to change professions because of her non-compete with CRC. Plaintiff is not in possession of other documents related to employment efforts.**

16.    Any and all documents referring to or relating to the damages you are seeking in this case.

**RESPONSE: Defendant is in possession of financial information that identifies Plaintiff's earnings as well as the earnings of other brokers. Plaintiff will produce interim earnings records and appropriate documentation related to other damages to the extent they can be identified.**

17.     Any and all documents, including but not limited to, letters, emails, notes, text messages, instant messages, sms messages, internet messages or posts made on or exchanged through social media websites, journals, diaries, calendars, desk pads or appointment books related to your employment with Defendants, including separation from employment.

**RESPONSE:  Plaintiff objects to this request as overly broad and unduly burdensome as not limited in time and scope. Plaintiff was employed with Defendants for more than 13 years and exchanged and created countless documents, messages, etc.  Plaintiff objects to this request in that it seeks information more readily available from Defendants records, e-mail servers, etc. Subject to and without waiving this objection, Plaintiff has provided certain employment documents including an employment agreement, her e-mails communicating her constructive discharge with HR and other documents she has available and will produce journal notes. To the extent plaintiff is in possession of any text messages or e-mails she will produce those documents.**

18.     Each and every handbook, manual, leaflet, procedure, guideline, memo, bulletin, directive and other documents on which you directly or indirectly rely in this legal action.

**RESPONSE:  Plaintiff objects to this request to the extent it seeks information protected by attorney work product. Discovery is still ongoing, and Plaintiff will follow all orders of the Court and the Federal Rules of Civil Procedure related to disclosure of documents.**

19.     Any and all documents or other items that are rightfully the property of the Defendants.

**RESPONSE: Plaintiff objects to this request as overly broad and unduly burdensome as not limited in time and scope. Plaintiff was employed with Defendants for more than 13**

years and exchanged and created countless documents, messages, etc.  Plaintiff objects to this request in that it seeks information more readily available from Defendants records, e-mail servers, etc. Subject to and without waiving this objection Plaintiff is no in possession of any property of Defendants.

20.     Any and all documents given or provided by the Defendants to you.

**RESPONSE: Plaintiff objects to this request as overly broad and unduly burdensome as not limited in time and scope. Plaintiff was employed with Defendants for more than 13 years and exchanged and received countless documents, messages, etc. Plaintiff objects to this request in that it seeks information more readily available from Defendants records, e-mail servers, etc. Subject to and without waiving this objection Plaintiff is not in possession of any documents provided by Defendants to plaintiff not otherwise disclosed.**

21.     A current curriculum vitae or resume.

**RESPONSE: Plaintiff will produce a current resume.**

22.     If your response to Interrogatory Number 23 was "yes", please produce a printout or screen shot of the social media posts.

**RESPONSE: Not Applicable.**

23.     Please produce a complete copy of all text messages between you and any of Defendants' current or former employees.

**RESPONSE: Plaintiff objects to this request as overly broad and unduly burdensome as not limited in time and scope. Plaintiff was employed with Defendants for more than 13 years and exchanged countless text messages.  Plaintiff objects to this request in that it seeks information more readily available from Defendants records. Subject to and without waiving this objection, Plaintiff will provide responsive documents to the extent she has them.**

As to interrogatory responses:

Kathryn Hendrix
Plaintiff


STATE OF ALABAMA          )
JEFFERSON COUNTY          )

     Before me, the undersigned, a Notary Public in and for said County and State, personally appeared Kathryn Hendrix, who on her oath stated the matters and facts alleged in the foregoing are turn and correct.

     Sworn and subscribed before me this 22ⁿᵈ day of October, 2021.

ASHLEY ROSE RHEA
Notary Public
Alabama State at Large

Notary Public
My Commission Expires: 12/23/23


As to objections:

Respectfully Submitted,

/s/ Leslie A. Palmer
Leslie A. Palmer
ASB-0436-L40P
Attorney for Plaintiff


OF COUNSEL:
Palmer Law, LLC
104 23rd Street South, Suite 100
Birmingham, AL 35233
E-mail: leslie@palmerlegalservices.com
Tel: (205) 285-3050

## CERTIFICATE OF SERVICE

     I hereby certify that on October 22, 2021, I served the foregoing by filing a copy with the Court's CM/ECF filing system, or sending via e-mail or U.S. Mail postage prepaid to the following:

Jenna M. Bedsole
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
jbedsole@bakerdonelson.com

/s/ Leslie Palmer
OF COUNSEL